LOCAL UNION 1397, UNITED STEEL-
WORKERS OF AMERICA, AFL–CIO;
Ronald Weisen; Thomas Jugan; and
Thomas Katona, Appellants,

v.

UNITED STEELWORKERS OF
AMERICA, AFL–CIO,
Appellee.

No. 84–3141.

United States Court of Appeals,
Third Circuit.

Argued Oct. 2, 1984.

Decided Nov. 23, 1984.

Rehearing and Rehearing En Banc
Denied Dec. 27, 1984.

Arthur Z. Schwartz (argued), Hall, Clif-
ton & Schwartz, New York City, for appel-
lants.

Michael H. Gottesman (argued), Bredhoff
& Kaiser, Washington, D.C., Bernard Klei-
man, Chicago, Ill., Carl B. Frankel, United
Steelworkers of America AFL–CIO, Pitts-
burgh, Pa., Bruce A. Miller, William A.
Wertheimer, Miller, Cohen, Martens & Sug-
erman, P.C., Detroit, Mich., for appellee.

Arthur L. Fox, II, Alan B. Morrison,
Public Citizen Litigation Group, Wash-
ington, D.C., for amicus curiae, Association
for Union Democracy.

Before ALDISERT, Chief Judge, and
HUNTER, and WEIS, Circuit Judges.

**OPINION OF THE COURT**

JAMES HUNTER, III, Circuit Judge:

The sole issue on this appeal is whether
the court below erred in applying the six-
month limitations period of section 10(b) of
the National Labor Relations Act
("NLRA"), 29 U.S.C. § 160(b) (1982), to an
action brought pursuant to section 102 of
the Labor Management Reporting and Dis-
closure Act ("LMRDA"), 29 U.S.C. § 412
(1982).[1] Relying on the Supreme Court's
analysis in *DelCostello v. Teamsters*, 462
U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476

**1.** It appears that we are the first court of ap-    peals to address this question. At present, the

(1983), we concur in the reasoning of the court below, and affirm the dismissal of appellants' action for failure to state a timely claim.

## I.

Appellants, Local Union 1397 of the United Steelworkers of America, AFL–CIO ("Local 1397"), Ronald Weisen, Thomas Jugan, and Thomas Katona brought this action against appellee, the United Steelworkers of America, AFL–CIO ("USWA") following the imposition of disciplinary action against appellants by the USWA Executive Board Appeal Panel on December 14, 1982. Local 1397 is a chartered local of the USWA, and Weisen, Jugan, and Katona are, respectively, President, Recording Secretary, and Safety Committee Chairman of Local 1397.

Accepting, as we must, the facts stated in appellants' complaint as true for purposes of this appeal, the record reveals that substantial differences existed between the leadership of the USWA and the leadership of Local 1397, as represented by the individual appellants, on a wide range of issues concerning Local 1397's membership. These issues included the level of pollution control in U.S. Steel Corporation plants, collective bargaining strategy, construction of new plants, arbitration policies, and internal union governance. In particular, Weisen actively sought, both through the union's political process and through the local's newspaper, *1397 Rank and File,* to oust USWA officials with whom he disagreed, and to alter USWA policies.

Appellants contend that their disagreements with the USWA leadership, as summarized above, motivated the USWA Executive Board to retaliate against appellants.

This retaliation allegedly took the form of disciplinary action imposed upon them by the USWA Executive Board Appeal Panel in December, 1982. The disciplinary action arose from complaints made by two members of Local 1397 against Weisen, Katona, and Jugan. The first member, John Balint, charged that both Weisen and Katona had threatened him with physical harm for actively opposing and criticizing the performance of Weisen and Katona in their official duties. The second member, Robert Chasko, Jr., charged Jugan with failing to inform the local membership of critical comments made by USWA auditors concerning the Local's finances. Although all three officers were acquitted at the local level, the USWA Executive Board Appeal Panel on appeal reconvened a hearing on the charges, reversed the local level findings, and imposed discipline on the three officers. Specifically, Weisen and Katona were officially reprimanded, and Jugan was suspended from his office for thirty days. The Executive Board Appeal Panel also reserved for eighteen months the right to hold a hearing and to take appropriate action on any further allegations of wrongdoing against Local 1397 and its officers. Appellants contend that this latter decision constituted the imposition of discipline against Local 1397.

Appellants filed their complaint in the federal court for the Western District of Pennsylvania in November, 1983, approximately eleven months after the imposition of the allegedly unlawful disciplinary action. The complaint was brought pursuant to section 102 of the LMRDA, and alleged that the disciplinary action violated appellants' rights as protected under section 101 of the LMRDA, 29 U.S.C. § 411 (1982).[2]

lower courts are split, although the majority favor applying section 10(b) to section 102 suits. *See, e.g., Adkins v. General Motors Corp.,* 573 F.Supp. 1188 (S.D.Ohio 1983); *Linder v. Berge,* 567 F.Supp. 913 (D.R.I.1983); *Yanik v. Nielson Freight Lines, Inc.,* 115 L.R.R.M. (BNA) 3295 (N.D.Cal.1983); *Bigbie v. Teamsters Local 142,* 114 L.R.R.M. (BNA) 2468 (N.D.Ill.1983). *But see Bernard v. Delivery Drivers,* 587 F.Supp. 524 (D.Colo.1984); *Gordon v. Winpisinger,* 581 F.Supp. 234 (E.D.N.Y.1984).

2. As to Weisen, Katona, and Jugan, the complaint alleged that the disciplinary action was in violation of their due process rights, as protected by section 101(a)(5), their right to free expression, as protected by section 101(a)(2), and their right to be free from retaliation for exercising such rights, as protected by section 609 of the LMRDA. In addition, the complaint alleged that the disciplinary action against Weisen and Jugan was taken in retaliation for their institution and support of court and administrative

The USWA moved to dismiss the complaint as time-barred, arguing that the appropriate limitations period was the six-month period of the NLRA, 29 U.S.C. § 160(b) (1982).

The district court, 580 F.Supp. 866, granted the motion, reasoning that in the absence of a specific limitations period under the LMRDA, the most appropriate limitations period was the six-month period of the NLRA, 29 U.S.C. § 160(b) (1982). In so holding, the district court rejected appellants' argument that the appropriate limitations period was Pennsylvania's six-year period for the tort of interference with business relations. *See Harrison v. AFL–CIO*, 452 F.Supp. 102 (E.D.Pa.1978) (Pennsylvania's six-year limitations period for interference with business relations appropriate period for LMRDA suit alleging wrongful expulsion from union). We now affirm.

## II.

■ The LMRDA does not provide a limitations period for suits brought pursuant to section 102 of the Act. Accordingly, federal courts entertaining such suits must "borrow" the most appropriate limitations period from some other source. *See, e.g., DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Although recognizing that precepts of interstitial lawmaking instruct federal courts to look generally to state law for "gap-filling" principles, *see, e.g., Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), the Court in *DelCostello* noted:

In some circumstances, however, state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law.

103 S.Ct. at 2289. Elaborating on this principle, the Court went on to state:

[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

103 S.Ct. at 2294.

The Court then held that the appropriate limitations period for "hybrid" section 301 actions was the six-month period found in section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1982). The Court noted the practical similarity between an unfair labor practice charge brought by an individual employee under the NLRA, and a breach of the duty of fair representation claim and a breach of contract claim brought by an individual employee against his union and employer under section 301. Equally important to the Court was the close similarity in policy considerations relevant to the choice of a limitations period for an unfair labor practice charge and for a "hybrid" section 301 action. In both situations, the federal labor policy in promoting stable bargaining relationships necessitates prompt resolution of disputes between an individual and his union or an individual and his employer, disputes that may affect the bargaining relationship between union and employer. This interest in prompt resolution, however, must be balanced in both situations against the individual employee's legitimate interest in attacking what he believes to be an unfair action taken against him. Recognizing that Congress adopted a six-month limitations period as an appropriate balance between these considerations in the unfair labor practice context, the *DelCostello* Court accepted that same balance for "hybrid" section 301 suits.

---

proceedings against the USWA, as protected by section 101(a)(4). Finally, as to Local 1397, the complaint alleged that the disciplinary action violated the Local's due process rights, as protected under section 101(a)(5), inhibited the exercise of the Local's and its members' rights to

free speech, as protected by sections 101(a)(1) and 101(a)(2), and was in retaliation for instituting court and administrative proceedings against the USWA, in violation of section 609 of the LMRDA.

Applying that same analysis to this appeal, we find that section 10(b) of the NLRA provides a more appropriate limitations period for suits brought under section 102 of the LMRDA than the state limitations periods urged upon us by appellants. As in *DelCostello*, an analogy between unfair labor practice charges and section 102 suits exists not only in practice, but more importantly in the considerations that underlie the choice of a limitations period in the federal labor law field. Further, we believe that a six-month, rather than a longer limitations period, is fair to all parties given the practicalities of most litigation under the LMRDA.

Despite appellants' protestations to the contrary, suits brought under section 102 of the LMRDA do bear a "family resemblance" to unfair labor practice charges.[3] *Cf. DelCostello*, 103 S.Ct. at 2293 (finding a "family resemblance" between unfair labor practice charges and breach of the duty of fair representation claims). Both section 8(b)(1) of the NLRA and section 102 are addressed to the same basic concern: the protection of individual workers from arbitrary action by unions, which have been appointed the exclusive representatives of such individuals in the workplace. Appellants' attempted distinction between the "internal" concerns of the LMRDA and the "external" concerns of section 8(b) of the NLRA is thus flawed. In our scheme of labor relations, a union has but one function: the representation of individual workers in collective bargaining with their employer. Whether an individual's dispute with his union concerns an "internal" matter, such as the freedom to speak against union leadership, or an "external" matter, such as the processing of grievances, every

dispute implicates the responsibility that a union has for the economic welfare of its members.

The instant case illustrates this connection between disputes over internal union policies and an employee's interest in the collective bargaining process. Appellants allege that the USWA leadership internally disciplined them in retaliation for appellants' public opposition to USWA action in the area of pollution control in U.S. Steel Corporation plants, USWA collective bargaining strategy, USWA arbitration policies, and USWA support of the purchase of Marathon Oil Company by U.S. Steel Corporation. Each of these areas is relevant to the USWA's role as exclusive bargaining representative for its members, a role governed by and accorded to the USWA by operation of the National Labor Relations Act.

Appellants and amicus nevertheless urge this court to find that a section 102 action is more analogous to a state action seeking the enforcement of civil rights. Although section 101 of the LMRDA contains what is commonly known as the union members' "Bill of Rights," *see, e.g., Mallick v. IBEW*, 644 F.2d 228, 235 (3rd Cir.1981), the purpose and operation of such rights cannot be divorced from general principles governing our federal labor policy.[4] Indeed, it is the similarity in policy considerations underlying the choice of a limitations period in both LMRDA suits and unfair labor practice charges that convinces us to apply the six-month limitations period of section 10(b) of the NLRA to the present dispute.

In adopting a six-month limitations period for unfair labor practice charges, Con-

---

**3.** Indeed, the National Labor Relations Board has recognized that identical union misconduct may form the basis for both an action under section 102 of the LMRDA and an unfair labor practice charge under section 8(b)(1) of the NLRA. *See, e.g., United Steelworkers of America, Local 1397*, 240 N.L.R.B. 848, 849 (1979).

**4.** The Supreme Court recently discussed the importance of uniformity in the area of federal labor law in *Burnett v. Grattan*, —— U.S. ——, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). In *Bur-*

*nett,* the Court decided not to apply a six-month administrative limitations period of a state discrimination statute to an action brought under the Civil Rights Acts. It noted, however, that *DelCostello* was distinguishable: "The importance of uniformity in the labor law field, and 'the realities of labor relations and litigation' ... informed our decision *not* to adopt a state statute of limitations that would be at odds with the purpose of the substantive federal law." —— U.S. at ——, 104 S.Ct. at 2931.

gress balanced the federal interest in stable collective bargaining relationships and rapid resolution of labor disputes against an employee's interest in the vindication of his rights under section 7 of the NLRA, 29 U.S.C. § 157 (1982). *DelCostello*, 103 S.Ct. at 2294 (quoting from *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1567–1568, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)). Those same concerns are present in suits brought under section 102 of the LMRDA. Clearly, a union member has an interest in vindicating his rights under sections 101 and 609 of the LMRDA, and a limitations period should not unduly impose on this interest. By the same token, however, rapid resolution of internal union disputes is necessary to maintain the federal goal of stable bargaining relationships, for dissension within a union naturally affects that union's activities and effectiveness in the collective bargaining arena. In the instant case, for example, appellants themselves allege that they seek to alter the bargaining strategy of the USWA leadership, and that the USWA retaliated against them because of their opposition to this strategy. As in *DelCostello*, therefore, we will defer to the Congressional balance of these interests and adopt the six-month limitations period of section 10(b) of the NLRA for actions brought under section 102 of the LMRDA.

As a final point, we also note that a six-month limitations period is not inherently unfair to LMRDA plaintiffs. As in this case, the allegedly unlawful activity in a section 102 action is rarely latent; generally, discipline is imposed, or rights are denied openly. Thus, six months is an adequate time period in which to decide whether to bring a section 102 action. Further, if the Supreme Court in *DelCostello* thought it fair to accord individual union members only six months in which to file their section 301 actions, we believe it similarly fair to accord those same individual union members only six months in which to file their section 102 actions.

### III.

We also address the issue of the retroactive application of our decision to-

day to claims arising prior to the date of this decision. This court recently addressed the retroactivity of decisions announcing changes in civil limitations periods in *Perez v. Dana Corp., Parish Frame Division*, 718 F.2d 581 (3d Cir.1983). In that case, this court held that the *DelCostello* decision should be applied retroactively to any claims that arose prior to that decision. In so holding, the *Perez* court relied on the test for retroactivity of limitations periods set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).

The *Chevron* decision articulates three factors that we must consider in determining the retroactivity of today's decision. First, we must determine whether the new decision establishes "a new principle of law, either by overruling clear past precedent on which the litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S. at 106, 92 S.Ct. at 355. Second, we must consider whether prospective-only application of the new decision will "further or retard its operation." *Id.* at 106–07, 92 S.Ct. at 355. Third, we must weigh "the inequity imposed by retroactive application." *Id.* at 107, 92 S.Ct. at 355. In our view, an analysis of these factors in the context of section 102 of the LMRDA supports the retroactive application of our decision today.

Our decision today neither establishes a new principle of law, nor decides an issue which could not have been foreshadowed. Since Justice Stewart's concurring opinion in *United Parcel Service v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the principle of adopting federal, rather than state, limitations periods in the area of federal labor law has been openly discussed in the courts, and even adopted by some courts prior to *DelCostello*. *See, e.g., Hall v. Printing and Graphic Arts Union*, 696 F.2d 494 (7th Cir.1982); *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982). Similarly, the importance of uni-

formity in limitations periods in the area of labor law was a major consideration in the *DelCostello* opinion itself. This desire for uniformity derives not from purely practical concerns, but from the realization that the two major competing policies in this area, stability in collective bargaining and protection of an employee's right to vindicate his rights, exist in practically every facet of labor law. *See, e.g., Sisco v. Consolidated Rail Corp.*, 732 F.2d 1188 (3d Cir.1984) (borrowing six-month limitations period of section 10(b) for suits brought under the Railway Labor Act for breach of the duty of fair representation). *But see Adams v. Gould, Inc.*, 739 F.2d 858 (1984, 3d Cir.) (applying federal limitations period under ERISA, instead of section 10(b) period, to "hybrid" section 301 action seeking contributions to pension plan).[5]

Although consideration of the first factor alone renders the question of retroactivity a close one, we believe that application of the second and third factors tips the balance in favor of retroactivity. Retroactive application of our decision today will further the policies behind our choice of the six-month limitations period for section 102 suits. Individuals with claims under section 102 will not be able to sit on their rights until it becomes in their best political interest to bring suit, but will be forced to bring such disputes into the open soon after they arise. This will speed the resolution of such disputes, thus stabilizing the relationship between individual and local union, local union and international union, and union and employer, while still affording grievants their day in court.

Finally, we see nothing inequitable in requiring grievants under section 102 to bring their suits within six months of their claims' accrual. In this case, for example, appellants admittedly were able to bring suit shortly after the allegedly wrongful discipline was imposed, but instead chose

for political purposes to wait for a more opportune time to file their complaint. Appellants' own political strategy, rather than this decision, has resulted in the loss of their section 102 remedy.

The judgment below shall be affirmed, and this decision retroactively applied to all claims arising prior to the date of this decision.

---

5. We find *Adams* to be distinguishable on its facts, although we agree with its analysis. In *Adams,* the court found that the policy favoring rapid resolution of labor disputes was not affected by a dispute over the funding of a pension plan which would pay future benefits to its participants. This distinction from the suit in *DelCostello,* plus the availability of an alternative *federal* limitations period in the labor area, led the *Adams* court to reject the limitations period of section 10(b) of the NLRA, 29 U.S.C. § 160(b) (1976).